**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ADVANCE BUSINESS CAPITAL LLC,          Case No. 14-cv-2077
a Delaware limited liability company,

          Plaintiff,

vs.

MIDWEST CARRIER SYSTEM, INC.,
an Illinois corporation,
L&B TRANSPORT INC., an Illinois corporation,
DRAGAN RANKOVIC, individually,
RADA JENNA HANSEN, individually,
COMPASS FUNDING SOLUTIONS LLC, an
Illinois limited liability company, and
TRANSPORTATION ALLIANCE BANK, INC.,
A Utah banking corporation,

          Defendants.

_____/

**ADVANCE BUSINESS CAPITAL LLC'S COMPLAINT AGAINST DEFENDANTS,**
**MIDWEST CARRIER SYSTEM, INC., L&B TRANSPORT INC., DRAGAN**
**RANKOVIC, RADA JENNA HANSEN, COMPASS FUNDING SOLUTIONS LLC,**
**AND TRANSPORTATION ALLIANCE BANK**

        Advance Business Capital LLC ("ABC"), a Delaware limited liability company, by and

through undersigned counsel, hereby sues Defendants, Midwest Carrier System, Inc. ("Midwest

Carrier"), an Illinois corporation, L&B Transport Inc. ("L&B Transport"), an Illinois corporation,

Dragan Rankovic, ("Rankovic"), individually, Rada Jenna Hansen ("Hansen"), individually,

Compass Funding Solutions LLC ("Compass Funding"), an Illinois limited liability company, and

Transportation Alliance Bank ("Transportation Alliance Bank"), a Utah banking corporation, jointly

and severally, and in support thereof states as follows:

**PARTY ALLEGATIONS**

        1.     Plaintiff, ABC, is a Delaware limited liability company with its principal place of

business located in Dallas, County, Texas.

JK8587

2.      Defendant, Midwest Carrier, is an Illinois corporation.

3.      Defendant, L&B Transport, is an Illinois corporation.

4.      Defendant, Rankovic, is an individual over the age of 18, and is otherwise *sui juris*.

5.      Defendant, Hansen, is an individual over the age of 18, and is otherwise *sui juris*.

6.      Defendants, Compass Funding, is an Illinois limited liability company and Transportation Alliance Bank is a Utah banking corporation.

## ALLEGATIONS APPLICABLE AS TO SUBJECT MATTER JURISDICTION

7.      ABC is a limited liability company incorporated under the laws of Delaware, with its principal place of business in Texas and whose members are all citizens of the State of Texas. The Defendant, Midwest Carrier, is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois.  The Defendant, L&B Transport, is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois.  The Defendant, Rankovic, is a citizen of Illinois.  The Defendant, Hansen, is a citizen of Illinois.   The Defendant, Compass Funding, is a limited liability company incorporated under the laws of the State of Illinois with its principal place of business in Illinois and, upon information and belief, whose members are all citizens of the State of Illinois. The Defendant, Transportation Alliance Bank, is a Utah banking corporation with its principal place of business in Utah.  The amount in controversy, without interest and costs exceeds the sum or value specified by 28 U.S.C. § 1332.

## ALLEGATIONS APPLICABLE TO VENUE

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) or (2) in that this action is filed in a judicial district in which one or more of the Defendants reside (as defined by

28 U.S.C. § 1391(c)) and/or a substantial part of the events or omissions giving rise to the claim occurred.

## ALLEGATIONS APPLICABLE TO CONDITIONS PRECEDENT

9.      All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

## ALLEGATIONS APPLICABLE TO EACH COUNT

**A.  The Type of Business which Midwest Carrier and L&B Transfer Conducted.**

**1.  The Business of Midwest Carrier.**

10.      Midwest Carrier was, at all relevant times, an interstate commercial motor carrier operating under a United States Department of Transportation ("USDOT") Number 2179907, which is a number assigned by Motor Carrier Management Information System ("MCMIS") to a census record.

11.      In addition, Midwest Carrier was assigned a motor carrier number by the Federal Motor Carrier Safety Administration ("FMCSA") which grants authority for interstate operations,[1] more specifically, motor carrier number MC-756943.

12.      Midwest Carrier has also received Dun & Bradstreet corporate registration under DUNS number 75-694-3.

13.      Midwest Carrier was licensed and authorized to provide, as a commercial motor carrier whose primary business activity is the transportation of property for compensation, transportation activities that were incidental to and in furtherance of its primary business activity in order to provide for hire interstate transportation of non-hazmat rated materials from the general freight cargo categories.

---

[1] Prior to January 1, 1996, these motor carrier numbers were issued by the Interstate Commerce Commission.

14.     According to the FMCSA Safety and Fitness Electronic Records ("SAFER") System, Midwest Carrier has lost its operating authority and is not authorized to operate as an interstate motor carrier.

15.     However, according to the online records of the Illinois Secretary of State's website, Midwest Carrier remains an active Illinois corporation, formed on June 3, 2011.

16.     According to the online records of the Illinois Secretary of State's website, Rankovic is Midwest Carrier's President, with an address of 399 Newberry Drive, Elk Grove Village, Illinois.

17.     Pursuant to the Certificate of Corporate Resolutions given by Midwest Carrier to ABC, Hansen is Midwest Carrier's Vice President and Secretary.

18.     Upon information and belief, Rankovic and Hansen are husband and wife.

**2.    The Business of L&B Transport.**

19.     L&B Transport is and has at all relevant times been an interstate commercial motor carrier operating under USDOT Number 2428154.

20.     In addition, L&B Transport was assigned, by the FMCSA, a motor carrier number MC-836811.

21.     L&B Transport is licensed and authorized to provide, as a commercial motor carrier whose primary business activity is the transportation of property for compensation, transportation activities that are incidental to and in furtherance of its primary business activity in order to provide for hire interstate transportation of non-hazmat rated materials from the general freight cargo categories.

22.     L&B Transport's operating status with the FMCSA is currently "authorized for Property" which means that L&B Transport has operating authority and is authorized to operate as an interstate motor carrier and transport freight.

23.     According to the online records of the Illinois Secretary of State, L&B Transport is an active Illinois corporation, formed on July 12, 2013.

24.     Hansen is the President of L&B Transport with a home address of 399 Newberry Drive, Elk Grove Village, Illinois.

**B.   The Factoring Relationship Between ABC and Midwest Carrier.**

**1.   That Portion of the Factoring Relationship Pertaining to the Factoring of Accounts.**

25.     ABC is a factoring company which means that it is a business that involves the purchasing of accounts receivable ("Accounts")[2] from businesses with whom it has formed a contractual relationship.

26.     Within the factoring industry, the entity that purchases Accounts is commonly known as the "Factor" or "Purchaser" of the Accounts, in this case ABC, and the entity from whom the accounts are purchased is commonly known as the "Factoring Client" or "Seller," in this case Midwest Carrier.  The final party in the factoring relationship, the party for whom the Seller has performed service(s) or sold good(s) and to whom an invoice is issued for payment, is commonly known as the "Customer" or "Account Debtor."

---

[2] The term "Accounts," as used in this Complaint, is intended to have the same meaning as that term is defined pursuant to the Uniform Commercial Code which defines "Account" to mean (i) a right to payment of a monetary obligation, whether or not earned by performance, (A) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed or (B) for services rendered . . .  Hereafter, each capitalized term not otherwise defined either by the Factoring Agreement or in this Complaint is intended to have the same meaning as that term is defined pursuant to the Uniform Commercial Code.

27.    On October 30, 2012, Midwest Carrier had entered into a written agreement titled "Factoring and Security Agreement" ("Factoring Agreement").  A true and correct copy of the Factoring Agreement is attached hereto as **Exhibit "1."**

28.    As a condition precedent to entering into a Factoring Agreement and implementing the factoring relationship with Midwest Carrier, ABC required that it receive a first priority ownership interest in all Accounts purchased as well as a first priority Security Interest[3] in any other assets of Midwest Carrier that served as ABC's Collateral.[4]

29.    In order to further protect its rights under the Factoring Agreement, ABC included the following "Successor Entity" liability section at Section 17 of the Factoring Agreement:

> In the event Client's principal(s), officer(s) or director(s), during the Term of this Agreement or while Client remains liable to Company for any Obligations under this Agreement, directly or in conjunction with any person, causes to be formed a new entity or otherwise become associated with any newly formed or existing entity, whether corporate, partnership, limited liability company or otherwise, such entity shall be deemed to have expressly assumed the Obligations Client owes Company under this Agreement unless Company is first notified of such association and expressly consents, in writing, to a waiver of Company's rights under this section.   With respect to each such entity, Company shall be deemed to have been granted an irrevocable power of attorney with authority to file, naming such newly formed or existing entity, a new UCC-1 financing statement naming such entity as Debtor, and to have it filed with any and all appropriate secretaries of state or other UCC filing offices. Company shall be held harmless by Client and its principals, officers or directors and be relieved of any liability as a result of Company's filing of any such financing statement or the resulting perfection of its ownership or Security Interests in such entity's assets.   In addition, Company shall have the right to notify such entity's

---

[3] Pursuant to the Uniform Commercial Code, "Security Interest" means an interest in personal property which secures payment or performance of an obligation.

[4] Pursuant to the Uniform Commercial Code, "Collateral" means the property subject to a security interest.  The term includes: proceeds to which a security interest attaches; accounts, chattel paper, payment intangibles, and promissory notes that have been sold; and goods that are the subject of a consignment.

> Account Debtors of Company's right, including without limitation, Company's right to collect all Accounts, and to notify any creditor of such entity that the Company has rights in such entity's assets.

The "Successor Entity Provision."

30.     On November 1, 2012, ABC perfected its ownership rights in the Accounts purchased under the Factoring Agreement, as well as its security interests in any non-purchased Accounts and other assets it received as Collateral, by filing a Uniform Commercial Code ("UCC") Financing Statement with the Illinois Secretary of State, naming Midwest Carrier as the "Debtor," which Financing Statement bears filing number 17726501 (the "ABC-Midwest Carrier Financing Statement"). A copy of the ABC-Midwest Carrier Financing Statement is attached hereto as **Exhibit "2."**

31.     Thereafter, in connection with the Factoring Agreement, Midwest Carrier offered to sell to ABC, and ABC purchased Accounts that arose from Midwest Carrier's transportation of freight and its right to receive payment from shippers or brokers that engaged Midwest Carrier in connection therewith.

### 2.     **That Portion of the Factoring Relationship Pertaining to the Fuel Advances.**

32.     In conjunction with the factoring services offered by ABC, Midwest Carrier also took advantage of ABC's "Cash4Truckers" fuel card, through its in-house "Fuel Advance Program." The Fuel Advance Program allowed Midwest Carrier to obtain funds to pay for fuel in advance of delivery of the freight that was being transported giving rise to the earned Accounts that would be purchased by ABC. As an example, Midwest Carrier is hired by XYZ Co. to deliver freight to some location. In this example, Midwest Carrier would charge XYZ Co. $1,000.00 for the delivery. ABC would pay up to 50%, or $500.00, to Midwest Carrier, in advance of the delivery

of the freight hauled to a Consignee,[5] so that Midwest Carrier could pay for the fuel required to make the delivery of such freight.  In this manner, a carrier becomes better able to pay for the fuel required to make delivery to the Consignee, in advance of the actual delivery itself.  When the freight is finally delivered, the amount Midwest Carrier would then routinely receive for the purchase price of the Account would be the balance due on the $1,000.00 invoice amount, less factor and reserve fees.

33.     In order to take advantage of ABC's Cash4Truckers program, Midwest Carrier was required to execute an EFS Commercial Services Application, which established an EFS LLC ("EFS")[6] account and credit card which Midwest Carrier used to purchase fuel.

34.     Each time Midwest Carrier advised ABC that it needed a fuel advance, it was required to complete a Fuel Advance Request Form.  The Fuel Advance Request Form identifies each shipper (that being the person that enters into a contract of transportation with an entity that issues a bill of lading), and the specific freight for which the fuel advance was being requested.  A sample Fuel Advance Request Form is attached hereto as **Exhibit "3."**  The following pertinent terms were contained on the Fuel Advance Request Form, which was then signed and dated by Midwest Carrier:

> Advance Business Capital does not advance more than 50% of the total rate agreed on the Rate Confirmation.  ABC charges a one-time fee per advance of $16.00.  Once an advance has been given by ABC, no outside advances shall be taken.  If outside advances are taken from a broker/shipper or any other financial source, ABC reserves the right to charge back the total amount advanced plus a $50 penalty fee.  Once an advance has been given by ABC the Client [Midwest Carrier] is required to submit their paperwork for factoring within 7 days or ABC reserves the right to charge back the total

---

[5] Pursuant to Article 7 of the Uniform Commercial Code, "Consignee" means a person named in a bill of lading to which or to whose order the bill promises delivery.

[6] EFS is the company through with the fuel credit cards are offered.

amount advanced. Standard funding transmission fees apply to all fuel advance transactions, pursuant to the Factoring and Security Agreement.

35. Based on the foregoing, before a fuel advance was permitted or could be legitimately requested, Midwest Carrier was required to deliver to ABC a Rate Confirmation sheet, which evidenced that there was, in fact, an underlying surface freight transportation arrangement between Midwest Carrier and its customer, the shipper, and that the terms of the freight transportation had already been agreed upon.

36. In addition, in connection with each fuel advance provided, Midwest Carrier understood and promised that once each advance in connection with a purchase price payment towards an Account was received, Midwest Carrier was required to submit all requisite paperwork required under the Factoring Agreement, as was necessary in connection with the sale of an Account, which was required to be done within seven days of the date on the Fuel Advance Request Form.

37. Accordingly, embodied within the Fuel Advance Request Form, and the advances made in connection therewith, Midwest Carrier and its principles, Rankovic and Hansen, represented each of the following:

    a. That an agreement for the transportation of freight had been reached;

    b. That the terms in connection with that transportation of freight arrangement were specifically agreed to between Midwest Carrier and its customer (either a shipper or broker);

    c. That the shipment in connection with the arrangement would, in fact, be accomplished within seven days; and

d.  That all requisite paperwork under the Factoring Agreement would be submitted

to ABC within seven days.

**C. ABC's Discovery of a Conspiracy Between Midwest Carrier, L&B Transport, Rankovic and Hansen.**

38.    On or about November 8, 2013, ABC learned that Hansen was associated with an

entity named L&B Transport by virtue of an application she sent to ABC (the "Application"), in

order to obtain ABC's factoring services for L&B Transport.

39.    On or about November 12, 2013, ABC preliminarily approved L&B Transport's

Application (the "Preliminary Approval"), on the following conditions:

a.  Hansen would be required to sign a personal guaranty; and

b.  Midwest Carrier would be required to sign a cross-corporate guaranty.

40.    ABC sent L&B Transport and Hansen copies of the referenced Guaranties, however,

executed copies were never returned.

41.    At the time of the Preliminary Approval, ABC had no reason to believe that

Midwest Carrier, Hansen, or Rankovic had any nefarious intentions, and assumed that Midwest

Carrier and L&B Transport would be operating simultaneously, albeit under different corporate

names, and for presumably good faith and legally appropriate bases.

42.    Shortly after L&B Transport had sent its Application to ABC, Midwest Carrier

started to notify ABC that numerous invoices representing freight loads that had been factored by

ABC, including fuel advances given in connection therewith, were either cancelled, not picked up,

or otherwise failed to come to fruition.

43.    For example, on several occasions ABC, in accordance with its normal operating

procedures, verified that Midwest Carrier was booked for a particular freight load and, after

advancing funds, later discovered that not only did Midwest Carrier never formally cancel the load, they did not even show up to pick up the load.

44.     As another example, Midwest Carrier failed to deliver several freight loads within the fourteen day period required under the Factoring Agreement.

45.     By the end of January 2014, ABC had become very suspicious and began to seriously question whether the use of L&B Transport by Rankovic and Hansen, as the principals, was in good faith and for proper purposes as it had initially assumed, due to, among other things, Rankovic and Hansen having refused to return ABC's telephone calls or otherwise contact ABC.  In addition, the amounts owed by Midwest Carrier on unpaid invoices and fuel advances were rising exponentially.

46.     On Wednesday, January 22, 2014, Hansen, after having received numerous inquiries from ABC applicable to the lack of communication and non-payment of Accounts, informed ABC by way of email that, "Unfortunately we are unable to run anymore. We are in a hole about $35,000 do to major repairs, insurance renewal down payment, recoursed invoices, etc. Contractors are leaving because their pay is late. I know you guys helped out when necessary but we ran out of that option as well and taking back $1k per schedule was hurting us as well. Because of us not being able to come up with funds for insurance, our authority will be cancelled as of this Sunday. Not sure what else we can do but Dragan and I tried as much as we can and we don't have a way out at this point."  As noted by Hansen, shortly thereafter, as ABC discerned, Midwest Carrier did became unauthorized to operate as an interstate motor carrier and had, essentially, gone out of business.  L&B Transport, on the other hand, appeared to have seamlessly picked up from where Midwest Carrier left off, and began operating as an authorized

interstate motor carrier who had appeared to enter into a factoring relationship with Compass Funding Solutions LLC.

47.     Upon information and belief, Hansen and Rankovic, transferred all or substantially all of the tangible and intangible assets of Midwest Carrier to L&B Transport, with no notice to ABC, and without ever having sought or obtained approval or consent from ABC to do so.

48.     Accordingly, on February 3, 2014, as permitted by the applicable provisions of the UCC and the Successor Entity Provision, ABC filed a UCC Financing Statement with the Illinois Secretary of State, naming L&B Transport as the "Debtor," which Financing Statement bears filing number 18984776 (the "ABC-L&B Transport Financing Statement").  A copy of the ABC-L&B Transport Financing Statement is attached hereto as **Exhibit "4."**

49.     Also pursuant to the Successor Entity Provision in the Factoring Agreement, ABC sent Notices of Assignment to all of Midwest Carrier's customers referencing the L&B Transport name and motor carrier number.

50.     On or about February 19, 2014, ABC learned that other entities, those being Compass Funding and Transportation Alliance Bank, had, as of December 10, 2013, also filed a UCC Financing Statement with the Illinois Secretary of State identifying all assets of L&B Transport as their collateral, which Financing Statement bears filing number 18830639 (the "Compass Funding-L&B Transport Financing Statement").  A copy of the Compass Funding-L&B Transport Financing Statement is attached hereto as **Exhibit "5."**

## COUNT I
## ACTION AGAINST MIDWEST CARRIER
## FOR BREACH OF FACTORING AGREEMENT

The Plaintiff, ABC, sues Defendant, Midwest Carrier, for breach of the Factoring Agreement, and as grounds therefore asserts the following:

51.     ABC hereby readopts and realleges paragraphs 1 through 50 as if each were fully and independently realleged herein.

52.     As more fully alleged throughout this Complaint, ABC and Midwest Carrier entered into a Factoring Agreement.

53.     Section 10 of the Factoring Agreement, titled "Default," states in relevant part, the following:

> 10.1.   **Events of Default**.  The following will constitute an Event of Default hereunder: (a) Client's [Midwest Carrier's] failure to pay any one or more Obligations or perform any provision hereof or of any other agreement now or hereafter entered into with Company [ABC]; or any covenant, warranty or representation contained herein proves to be false in any way… and (e) Company [ABC], in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations or any other required performance under this Agreement. (hereinafter collectively, "Events of Default").

> 10.2.   **Effect of Default**. Upon the occurrence of any Event of Default, in addition to any rights Company [ABC] has under this Agreement or applicable law, Company may…deem all Obligations immediately due and payable…

54.     Midwest Carrier has committed one or more Events of Default under the Factoring Agreement, including, without limitation, the following:

> a.   Midwest Carrier's failure to pay one or more Obligations based on ABC's demand, pursuant to Section 6 of the Factoring Agreement, that Midwest

Carrier Repurchase a Purchased Account due to that Purchased Account remaining unpaid beyond the Repurchase Period;

b. Midwest Carrier's breach of one or more Representations and Warranties, as set forth in Section 8 of the Factoring Agreement, including without limitation (i) that Midwest Carrier is solvent, in good standing in the jurisdiction of its organization, and able to pay its debts as they mature; (ii) that Midwest Carrier holds, and will hold until Complete Termination, a valid operating permit to transact business as a Motor Carrier; and (iii) that all financial statements and information relating to Midwest Carrier which have been furnished by Midwest Carrier to ABC are true, correct and complete in all material respects, and there have been no material adverse changes in the condition (financial or otherwise) of Midwest Carrier since submission;

c. Midwest Carrier's breach of one or more Covenants, as set forth in Section 9 of the Factoring Agreement, including without limitation (i) that the Purchased Accounts are and will remain bona fide existing obligations created by the full and complete rendition of services or the unconditional sale and delivery of goods in the ordinary course of Midwest Carrier's business; (ii) that the Purchased Accounts are and will remain unconditionally owed and will be paid to ABC in full; (iii) that Midwest Carrier shall not create, incur, assume or permit to exist any security interest or lien or any form of adverse ownership interest or claim upon or with respect to any of the Purchased Accounts or Collateral in which ABC now or hereafter holds an ownership or a security interest; and (iv) Midwest Carrier shall not sell, transfer or assign

more than 20% of its assets to any non-Affiliate without first receiving ABC's written consent;

d.   Midwest Carrier, acting by and through its principals, Rankovic and Hansen, received freight charge payments from customers.  Pursuant to section 9.4 of the Factoring Agreement, Midwest Carrier's duties were specifically addressed in connection with payments made on accounts and said provision reads as follows:

> Client shall not solicit from any Account Debtor any form of payment in respect to a Purchased Account or any Account offered for sale to Company.  Should Client receive payment of all or any potion of any Purchased Account, Client shall immediately notify Company of receipt of the payment, hold said payment in express trust for Company separate and apart from Client's own property and funds, and deliver said payment to Company without delay in the identical form in which received by no later than the next banking day following the date of receipt.

Instead of performing as promised and covenanted, Midwest Carrier, acting by and through its principals, Rankovic and Hansen, assumed control and (1) failed to notify ABC of receipt of payments from Account Debtors, (2) failed to hold such Account Debtor payments in trust for ABC and (3) failed to deliver such Account Debtor payments over to ABC in kind.  One example of a misdirected Account Debtor payment withheld by Midwest Carrier is a check issued by JDLogistics, Inc. to Midwest Carrier dated December 6, 2013, a copy of which is attached hereto as **Exhibit "6."**

e.   ABC's good faith belief that it is insecure with respect to the prospect of repayment or performance of the Obligations or any other required performance under the Factoring Agreement.

(The above subparagraphs a. through d. shall be collectively referred to herein as "Events of Default").

55.     As a result of Midwest Carrier having committed the above-described Events of Default and thereby having breached the Factoring Agreement, including the unpaid fuel advances, all of its obligations arising under the Factoring Agreement became immediately due and owing.

56.     ABC has sustained compensatory damages in the amount not less than $109,618.17, which consists of fuel advances, unpaid invoices, and short pays on invoices.

57.     In addition, ABC is entitled to be reimbursed all of its reasonable attorneys' fees and costs incurred in this matter pursuant to Section 18 of the Factoring Agreement.

WHEREFORE, Plaintiff, ABC, demands judgment against Defendant, Midwest Carrier, for compensatory damages in an amount no less than $109,618.17, pre-judgment and post judgment interest, attorneys' fees, costs and such other and further relief as this Court deems appropriate.

## COUNT II
## ACTION AGAINST DRAGAN RANKOVIC
## FOR BREACH OF PERSONAL GUARANTY

The Plaintiff, ABC, sues Defendant, Rankovic, for breach of a Personal Guaranty, and as grounds therefore asserts the following:

58.     ABC hereby readopts and realleges paragraphs 1 through 57 above as if each were fully and independently set forth herein.

59.     On October 30, 2012, in order to induce ABC to enter into the Factoring Agreement with Midwest Carrier, Midwest Carrier's principal, Rankovic, executed a Personal Guaranty, thereby promising to absolutely guaranty and indemnify ABC "from any direct,

indirect, or consequential damage or loss which the Company [ABC] may sustain as a result of the breach of any statement, contained" in the Personal Guaranty. A true and correct copy of the Personal Guaranty is attached hereto as **Exhibit "7."**

60. Pursuant to the Personal Guaranty, Rankovic represented and stated, among other things, that:

> (1) All Client's [Midwest Carrier's] accounts which have been or will be reported or sold to the Company [ABC]…, are and will remain genuine and in all respects what they purport to be, and will represent bona fide obligations of Client's customers…; (2) Each copy of an invoice delivered to or shown to the Company…is and shall be a true and genuine copy of the original sent to the Account debtor named therein and accurately reflects all terms of the transaction from which such Account arose, including but not limited to the amounts due, the invoice date and the payment due date…; (3) All reports that the Company receives from the Client … will be true and accurate; (6) The Accounts will be, up to the point of sale, the sole property of Client, and the Accounts are and will remain free and clear of all liens and security interests, except in the Company's favor; and (7) Client will promptly perform all responsibilities and pay any and all indebtedness and Obligations as specified under the Factoring Agreement.

(the "Guaranteed Obligations").

61. As averred in Count I, Midwest Carrier has committed one or more Events of Default under the Factoring Agreement due to, among other things, having sold Accounts to ABC that violated the covenants, representations and warranties.

62. Pursuant to the Personal Guaranty, Rankovic has become jointly and severally responsible for all of the indebtedness and obligations arising under the Factoring Agreement and the Personal Guaranty.

63. ABC has demanded that Rankovic satisfy all direct and indirect damages and losses arising under the Factoring Agreement and the Personal Guaranty as same are more

specifically described in Count I, but Rankovic, in violation of the Personal Guaranty, has failed and/or refused to pay ABC, in full.

64.     Rankovic's breach of the Personal Guaranty has caused ABC to sustain compensatory damages in the amount not less than $109,618.17, which consists of fuel advances, unpaid invoices, and short pays on invoices.

65.     In addition, ABC is entitled to be reimbursed all of its reasonable attorneys' fees and costs incurred in this matter pursuant to the Guaranty.

**WHEREFORE,** Plaintiff, ABC, demands judgment against Defendant, Rankovic, individually and/or jointly and severally, for all of the above-described compensatory damages, prejudgment and post judgment interest, attorneys' fees and costs and such other and further relief as this Court deems appropriate.

### COUNT III
### ACTION AGAINST L &B TRANSPORT, HANSEN, AND RANKOVIC
### FOR CIVIL CONSPIRACY

The Plaintiff, ABC, sues Defendants, L&B Transport, Hansen, and Rankovic, for civil conspiracy in connection with the Defendant, Midwest Carrier's breach of the Factoring Agreement, and as grounds therefore asserts the following:

66.     ABC hereby readopts and realleges paragraphs 1 through 65 as if each were fully and independently realleged herein.

67.     As more fully set forth throughout this Complaint, Midwest Carrier, L&B Transport, Hansen, and Rankovic conspired together by agreement to cause Midwest Carrier to breach its Factoring Agreement with ABC.

68.     In furtherance of the conspiracy, Hansen and Rankovic agreed to use and caused L&B Transport to conduct business as a commercial motor carrier whose primary business activity is the transportation of property for compensation.

69.     The business of L&B Transport is substantially similar, if not identical, to the business of Midwest Carrier.

70.     In addition to the use of L&B Transport to conduct substantially similar, if not identical, business to that of Midwest Carrier, Hansen and Rankovic in their individual capacities and as agents for L&B Transport, further conspired to transfer, and in fact transferred all, or substantially all of the tangible and intangible assets of Midwest Carrier to L&B Transport, with no notice to ABC, and without ever having sought or obtained approval or consent from ABC to do so.

71.     ABC learned that Midwest Carrier became unauthorized to operate as an interstate motor carrier and had essentially gone out of business.  L&B Transport, on the other hand, appeared to have seamlessly picked up where Midwest Carrier left off, and was operating as an interstate motor carrier.

72.     Based on all of the foregoing, and as set forth in paragraphs 38 through 65 above, L&B Transport, Hansen, and Rankovic conspired to cause Midwest Carrier to breach the Factoring Agreement.

73.     As a direct and proximate result of the foregoing civil conspiracy, including the overt acts of Midwest Carrier, L&B Transport, Hansen, and Rankovic, in the use of L&B Transport and the transferring of all assets of Midwest Carrier to L&B Transport, ABC has sustained compensatory damages in the amount not less than $109,618.17, which consists of fuel advances, unpaid invoices, and short pays on invoices.

**WHEREFORE,** Plaintiff, ABC, demands judgment against Defendants, L&B Transport, Hansen, and Rankovic individually and/or jointly and severally, for all of the above-described compensatory damages, prejudgment and post judgment interest, costs and such other and further relief as this Court deems appropriate.

**COUNT IV**
**ACTION AGAINST L&B TRANSPORT AND HANSEN**
**FOR AIDING AND ABETTING**

The Plaintiff, ABC, sues Defendants, L&B Transport and Hansen, for aiding and abetting Midwest Carrier's breach of the Factoring Agreement, and as grounds therefore asserts the following:

74.     ABC hereby readopts and realleges paragraphs 1 through 65 as if each were fully and independently realleged herein.

75.     As more fully set forth throughout this Complaint, Midwest Carrier breached the Factoring Agreement.

76.     The business of L&B Transport is similar, if not identical, to the business of Midwest Carrier.

77.     In addition to using L&B Transport to conduct substantially similar, if not identical, business to that of Midwest Carrier, Hansen, both individually and on behalf of L&D, knowingly and substantially aided in the breaches of the Factoring Agreement by transferring all, or substantially all of the tangible and intangible assets of Midwest Carrier to L&B Transport, with no notice to ABC, and without having sought or obtained approval or consent from ABC to do so.

78.     ABC learned that Midwest Carrier became unauthorized to operate as an interstate motor carrier and had essentially gone out of business.  L&B Transport, on the other hand,

appeared to have seamlessly picked up where Midwest Carrier left off, and was operating as an interstate motor carrier.

79.     L&B Transport and Hansen were each fully aware of their respective roles as part of the overall scheme to enable, aid and abet Midwest Carrier to breach the Factoring Agreement at the time of their acts which assisted in the breaches.

80.     As a direct and proximate result of the foregoing, ABC has sustained compensatory damages in the amount not less than $109,618.17, which consists of fuel advances, unpaid invoices, and short pays on invoices.

**WHEREFORE,** Plaintiff, ABC, demands judgment against Defendants, L&B Transport and Hansen, individually and/or jointly and severally, for all of the above-described compensatory damages, prejudgment and post judgment interest, costs and such other and further relief as this Court deems appropriate.

## COUNT V
## ACTION AGAINST L&B TRANSPORT FOR CONVERSION

The Plaintiff, ABC, sues Defendant, L&B Transport, for conversion, and as grounds therefore asserts the following:

81.     ABC hereby readopts and realleges paragraphs 1 through 50 as if each were fully and independently realleged herein.

82.     As more fully set forth throughout this Complaint, ABC and Midwest Carrier had a factoring relationship pursuant to the Factoring Agreement attached hereto as Exhibit "1."

83.     In order to perfect its ownership rights in the Accounts purchased under the Factoring Agreement, as well as its security interests in any non-purchased Accounts and other assets it received as Collateral, ABC filed the ABC-Midwest Carrier Financing Statement.

84.     Upon learning that L&B Transport had been used by Hansen and Rankovic for nefarious purposes as more fully explained in paragraphs 38 through 50, *supra.,* on February 3, 2014, as permitted by the applicable provisions of the UCC, ABC filed the L&B Transport UCC Financing Statement.

85.     ABC filed the ABC-L&B Transport Financing Statement pursuant to both the UCC and the Successor Entity provision in its Factoring Agreement with Midwest Carrier.

86.     ABC also sent Notices of Assignment to all of Midwest Carrier's customers referencing the L&B Transport name and motor carrier number, also pursuant to the Successor Entity paragraph in the Factoring Agreement.

87.     Based on the foregoing, L&B Transport has exercised an unauthorized and wrongful assumption of control or ownership over collateral in which ABC has a perfected security interest (the "Collateral").

88.     ABC has a right to the Collateral under the Factoring Agreement and under the ABC-Midwest Carrier and ABC-L&B Transport Financing Statements.

89.     ABC has an immediate right to possession of the Collateral pursuant to the Factoring Agreement and under the ABC-Midwest Carrier and ABC-L&B Transport Financing Statements.

90.     L&B Transport has refused to relinquish possession of the Collateral despite ABC's demand.

**WHEREFORE,** Plaintiff, ABC, demands judgment against Defendant, L&B Transport, for all of the above-described compensatory damages, prejudgment and post judgment interest, costs and such other and further relief as this Court deems appropriate.

## COUNT VI
## ACTION AGAINST MIDWEST CARRIER, L&B TRANSPORT, COMPASS FUNDING AND TRANSPORTATION ALLIANCE BANK FOR DECLARATORY JUDGMENT

The Plaintiff, ABC, sues Defendants, Midwest Carrier, L&B Transport, and Compass Funding, for declaratory relief under 28 U.S.C. § 2201, and as grounds therefore asserts the following:

91.     ABC hereby readopts and realleges paragraphs 1 through 50 as if each were fully and independently realleged herein.

92.     As more fully set forth throughout this Complaint, ABC and Midwest Carrier had a factoring relationship pursuant to the Factoring Agreement attached hereto as Exhibit "1."

93.     In order to perfect its ownership rights in the Accounts purchased under the Factoring Agreement, as well as its Security Interests in any non-purchased Accounts and other assets it received as Collateral, ABC filed its ABC-Midwest Carrier Financing Statement.

94.     Upon learning that L&B Transport had been formed for nefarious purposes as more fully explained in paragraphs 37 through 50, *supra.,* on February 3, 2014, as permitted by the applicable provisions of the UCC, ABC filed its L&B Transport UCC Financing Statement.

95.     ABC filed its ABC-L&B Transport Financing Statement pursuant to both the UCC and the Successor Entity provision in its Factoring Agreement with Midwest Carrier.

96.     ABC also sent Notices of Assignment to all of Midwest Carrier's customers referencing the L&B Transport name and motor carrier number, also pursuant to the Successor Entity paragraph in the Factoring Agreement.

97.     On or about February 19, 2014, ABC learned that another factoring entity, Compass Funding and/or Transportation Alliance, had also filed the Compass Funding-L&B Transport Financing Statement.

98.     Based on all of the foregoing, an actual controversy exists between ABC and Compass Funding and/or Transportation Alliance as to the effectiveness of the Compass Funding-L&B Transport Financing Statement in relation to the ABC-L&B Transport Financing Statement and to what extent any of the L&B Transport assets that serve as Compass Funding and/or Transportation Alliance Bank's collateral are, in fact, nothing more than Collateral and proceeds of assets that belonged to Midwest Carrier and that serve as ABC's collateral.

99.     More specifically, §810 ILCS 5/9-315 states the following in pertinent part:

> **Sec. 9-315.** Secured party's rights on disposition of collateral and in proceeds. (a) Disposition of collateral: continuation of security interest …; proceeds. Except as otherwise provided in this Article and in Section 2-403(2) [810 ILCS 5/2-403]:
>
> (1) a security interest … continues in collateral notwithstanding sale … license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest …; and
>
> (2) the security interest attaches to any identifiable proceeds of Collateral.
>
> (b) When commingled proceeds identifiable. Proceeds that are commingled with other property are identifiable proceeds:
>
>> (1) if the proceeds are goods, to the extent provided by Section 9-336 [810 ILCS 5/9-336]; and
>>
>> (2) if the proceeds are not goods, to the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this Article with respect to commingled property of the type involved.

100.     In addition, the Successor Entity provision in the parties' Factoring Agreement was specifically intended to protect ABC's rights under the Factoring Agreement, ensuring that any successor entity of Midwest Carrier that qualified under the Successor Entity provision, such

as L&B Transport, would assume all of the obligations of Midwest Carrier as well as assuming the duty of holding ABC harmless from any liability associated with its having filed the ABC-L&B Transport Financing Statement.

101. Due to the existence of the Compass Funding-L&B Transport Financing Statement, ABC seeks a declaration from this Court that ABC has a superior interest to that of Compass Funding and Transportation Alliance Bank in the tangible and intangible assets that were transferred to L&B Transport pursuant to §810 ILCS 5/9-315.

102. ABC seeks a further declaration from this Court that L&B Transport became and remains liable to ABC for all of Midwest Carrier's obligations under the Factoring Agreement.

**WHEREFORE** Plaintiff, ABC, respectfully requests this Court to enter a Declaratory Judgment ordering and declaring the following:

1. That ABC properly perfected security interest in the tangible and intangible assets of Midwest Carrier transferred to the assets of L&B Transport pursuant to §810 ILCS 5/9-315;

2. That ABC's perfected security interest in the tangible and intangible assets of Midwest Carrier is superior to and takes priority over any interest Compass Funding and/or Transportation Alliance may claim in those assets;

3. That to the extent that Compass Funding and/or Transportation Alliance Bank has received any portion of ABC's Collateral, including any Proceeds of Collateral, that Compass Funding and/or Transportation Alliance Bank be held to account to ABC and that either ABC be awarded an equitable lien or constructive trust upon any such property and/or that Compass Funding and/or Transportation Alliance Bank be ordered to disgorge and/or pay over to ABC the value of all such Collateral and Proceeds; and

4. That this Court grant such other and further relief as it deems just and proper.

Respectfully submitted,


By:_____/s/ Vincent T. Borst_____

Vincent T. Borst (ARDC No.: 06192904)
ROBBINS, SALOMON & PATT, LTD.
*Attorneys for Advance Business Capital LLC*
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
Telephone: (312) 456-0182
Facsimile:  (312) 782-6690
Email: vborst@rsplaw.com


MICHAEL W. ULLMAN (Florida Bar No. 259667)
JARED A. ULLMAN (Florida Bar No. 90500)
*(Each seeking Pro Hac Vice admission)*
ULLMAN & ULLMAN, P.A.
*Attorneys for Advance Business Capital LLC*
150 East Palmetto Park Road, Suite 700
Boca Raton, Florida 33432
Telephone: (561) 338-3535
Facsimile:  (561) 338-3581
Email:  michael.ullman@uulaw.net
Email:  jared.ullman@uulaw.net